## RICE et al. v. UNITED STATES.
### No. 9942.

United States Court of Appeals.
District of Columbia Circuit.

Argued Oct. 13, 1949.

Decided Nov. 28, 1949.

Messrs. Eugene X. Murphy and Rex K. Nelson, Washington, D. C., for the appellant.

Mr. Joseph M. Howard, Assistant United States Attorney, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, Washington, D. C., was on the brief, for appellee.

Messrs. John D. Lane, Assistant United States Attorney and Stafford R. Grady, Assistant United States Attorney, Washington, D. C., also entered appearances for the appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a judgment for the appellee, the United States, defendant

below, in a suit brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., tried to the United States District Court for the District of Columbia, without a jury. The case involves an accident to the appellant, Donald Rice, plaintiff below, which resulted in the eventual loss of both his legs. There are two conflicting versions of how this accident occurred. The appellant's story is that on November 14, 1945, he and several other boys, all minors, were playing on the grounds of Saint Elizabeths Hospital where, during the last war, an obstacle course had been constructed by the Army. Also on the Hospital grounds, and running through the obstacle course, is a short spur track which is used by the United States Government through its agents to haul supplies from the Baltimore and Ohio Railroad tracks to the Hospital. A small, 50 ton dinky engine is employed for this work. On the day in question, the appellant and the other boys, who had been playing on the obstacle course, had stopped to get a drink of water when they spied the dinky engine backing an empty car down the spur towards the main tracks. The train, which was operated by two men, the engineer, Luckett, and the fireman, McClure, was incapable of attaining a speed of greater than 20 m. p. h. and was seldom, if ever, used at speeds greater than 15 m. p. h. Some of the boys ran along side of it as it moved down the tracks, and others, including the appellant, jumped on and rode. The engineer called to one Bell, who was working along the tracks, to drive the boys off. He managed to chase all but one of them from the train. One boy, the appellant, remained on the cowcatcher until the train reached the switch where it shunted off the empty car. A loaded, Virginia type, coal car was then coupled onto the engine, and the return trip to the Hospital got under way. Several of the boys, including the appellant, climbed on the coal car and rode back. Donald Rice was on the left front part of the coal car and had climbed up the side until his head was almost level with the top of the car when he looked up and saw a pair of legs coming at him across the load of coal. Within a matter of moments he was kicked at and, as a result, fell from the car and went under the wheels. This story was corroborated by the plaintiff's witnesses, two of the boys who had been playing with him at the time, and who, likewise, were riding on the coal car. Both these witnesses identified the engineer as the man on top of the coal car. One testified that he saw Luckett kick at the appellant, and the other testified that as soon as he saw Luckett come up on top of the car and advance across the load of coal he, the witness, jumped off.

The government's version of the accident is that while the crew was hitching on the loaded car they attempted to chase the boys away, and, believing that they were successful, had started on the trip back to the Hospital without checking further to see whether or not any of the children had come back. McClure, the fireman, boarded the engine on the right side and immediately coaled the fire before crossing over to the left side. For this reason he did not see the boys who had climbed on the left side of the coal car until he crossed over and looked out the door. At the time the engine had attained a speed of between 12 and 15 m. p. h. When he looked out the door, McClure testified that he saw four boys clinging to the left front side at a point about level with the bottom step of the ladder or the truck. All were holding onto a hand rail which was a little less than half way up the side of the car. When the boys saw McClure they tried to get off but experienced difficulty because, at that point, just before the tracks crossed over a dirt road, there was a "little bank" along side. McClure further testified that this bank knocked Donald Rice from the coal car, and he fell down under the wheels.

The court below accepted the government's version of the accident, and it is the opinion of this Court that, in so doing, it committed reversible error because, in light of the evidence before that Court, reasonable men could not have concluded that the accident happened in the manner claimed, and because the lower court was clearly erroneous in making findings of fact which were contrary to the evidence.

In addition to the testimony of the fireman as to how the accident happened, the government also offered into evidence four photographs marked Government's Exhibits A, B, C, and D. A and B are pictures of the left and right sides of the train, and C and D are pictures of the scene of the accident showing the point at which the dirt road crosses the tracks and also the "little bank" which is alleged to have knocked Donald Rice from the coal car. In Exhibits A and B, because of the location of the train and the angle of the pictures, it likewise is possible to see both the crossing and the so-called bank. A careful examination of Exhibit A appears to demonstrate that, at best, the "little bank" in question is less than two feet high; that the bottom rung of the ladder and the truck where the boys were supposed to be standing clear the ground by more than a foot; and that the clearance between the bank and the bottom step of the ladder is somewhere around a foot. But this picture is deceiving because of the angle at which it was taken and the fact that perspective in two dimensional pictures does not give one an accurate idea of relative sizes and distances without some ascertainable scale to which various objects can be compared. An examination of Exhibits C and D, suggesting that the bank is even lower, smaller, and further away from the track than it appears in Exhibit A, further highlights the deceptive nature of that photograph. As a matter of fact, in the photograph marked Government's Exhibit D, which is a panoramic scene of the spot where the accident occurred, looking down the track, it appears to this Court that not only was it improbable that the accident occurred in the manner claimed by the government, but it was impossible. Suffice it to say that the physical facts demonstrated by these pictures were such as to place a reasonable man on notice that it was highly doubtful that the accident could have happened in the manner testified to by the government's witness, and, therefore, we hold that the lower court abused its discretion in concluding as it did in its finding of fact number eleven,[1] that the appellant, Donald Rice, was knocked from the coal car by the "little bank" without first making a more thorough investigation of the facts. Before making such a finding, it, at least, would have been incumbent on that Court to require more specific evidence in regard to the true appearance of the scene and the other facts, to wit, the measurements of the height of the bank in question, the height of the bottom step of the left front ladder of the coal car from the ground, the amount of overhang of the coal car over the track, the distance of this so-called bank from the track, and any other facts that the court might have concluded would have been helpful in ascertaining the probability of the accident happening in the manner found.

Since, as we have stated, the photographic exhibits were sufficient to put a reasonable man on notice that it was doubtful that the accident occurred in the manner claimed by the government, it behooves us to examine the other evidence on which the court relied in reaching the conclusion stated in finding of fact number eleven.

The record reveals that the fireman, McClure, was the only government witness who testified to this account of the accident. In other words, disregarding the photographs for the moment, all that the court below had to go on in its findings pertaining immediately to the accident was the testimony of McClure. And yet that Court had itself so effectively impeached McClure's testimony on the subject that we deem that it committed error in basing findings thereon. In the face of an admission by the fireman, prompted by the court's own questioning, that he (McClure) at the time didn't know which, if any, of the boys clinging to the coal car was the plaintiff, the court found that "When first seen by McClure at this time, plaintiff was clinging to the left front side of the coal car."[2] The court then found in finding number ten that "Donald

---

1. Finding of fact number eleven states: "Donald Rice was caused to fall from the coal car by the train's running near an embankment which knocked the boy from the side of the car and caused him to fall off and roll under the wheels of the train."

2. Finding of act number nine.

Rice fell from the coal car almost immediately after being observed by fireman McClure." This was based on testimony by McClure that he saw the plaintiff get knocked off the car by the "little bank", which was likewise subsequently impeached by the court when it got him to admit that he did not know which one of the boys was the one who afterwards got hurt. In short, all that is left unimpeached of McClure's story is that he saw one boy get knocked off by the bank,[3] but he could not say whether it was this boy or one of the others who was the one who got hurt.

To further punctuate the errors in its findings, the lower court demonstrated that there was some doubt in its mind as to the truth or falsity of the appellant's story when it made the equivocal finding that, "If there was any adult person on the top of the coal car, there is no evidence warranting a finding that such a person was an employee or agent of the United States."[4] A necessary corollary of finding, as that Court did, that the defendant's version of the accident was the true one was the conclusion that the story told by the appellant was false. But it was unable to state positively that there either was or there was not a person on top of the car. If there was an adult person on top of the coal car, then, in order to invalidate the remainder of appellant's case that he was kicked by said adult, it would have been necessary to have had another finding to the effect that that adult person did not kick Donald Rice thereby causing him to fall. There is no such finding here. On the contrary the lower court indicates that it might have been possible that there was an adult atop that coal car. And since there might have been an adult there, it certainly clearly indicates abuse of discretion for the court to find for the defendant when, without more, every reasonable intendment of fact would seem to be in favor of the plaintiff's version.

Likewise, finding of fact number fifteen is in error when it says that, "If there was any adult person on the top of the coal car, there is no evidence warranting a finding that such a person was an employee or agent of the United States," because all the evidence points to at least one clear fact, viz., the only adults either on the train or about the premises at the time were all government employees. Therefore, if there was any adult person on top of the coal car, it had to be a government employee. Furthermore, the testimony of both witnesses for the plaintiff who positively identified Luckett as the man atop the coal car warrants a finding that, if there was such a person, it was the engineer.

Although we do not mean to imply that this court will substitute its judgment of the credibility of witnesses for that of the trial court, we do mean to bolster the foregoing demonstration of abuse of discretion, in light of the fact that there was doubt in the lower court's mind as to whether or not there was an adult person on top of the coal car, by pointing out that whereas the testimony of the witnesses for the plaintiff, all teen-age boys, was unimpeached, the testimony of the two principal witnesses for the government, the fireman and the engineer, called by the plaintiff as hostile witnesses, was contradictory and at some points evasive until pinned down. Thus in one instance, the engineer testified that the boys ran off towards the Baltimore and Ohio tracks after he had told them, "If you boys don't get out of here you are liable to get hurt playing around a railroad like this," while on the other hand, the fireman testified that he himself chased the boys away and that "they run in every direction; they scattered all round." If the fireman chased the boys after he had thrown the switch to enable the engine to back down to the loaded cars on the next track, as he said, and if they scattered, then the engineer's testimony that all the boys were standing around when he came "out on the side track" and it was then that he chased them must be false because, obviously, if they had already been chased by the fireman, they could not be around to be told to get away

3. A fact which, as we have already indicated, is sufficiently doubtful to preclude the lower court from making a finding to that effect on the basis of the evidence before it.

4. Finding of fact number fifteen.

by the engineer. Conversely, of course, if the engineer's story is true, then that of the fireman in this respect must be false. At another point the stories of the fireman and the engineer were in diametric opposition on a matter on which, in view of the fact that they had been on the same job together for at least six years and must, therefore, have had similar experiences, they should have been in complete accord. The engineer testified that, although he had had experience in the past with children playing around the train, there had been none of them around during the past couple of years. On the other hand, the fireman testified that it was not until within the last two years that children had been playing around the grounds of St. Elizabeths and now they played there almost daily. He attributed this to the fact that a Negro settlement had grown up in the vicinity during the war years. In his testimony, government witness McClure testified at first that the only way to get from the engine to the coal car was to go out one of the side doors of the cab and swing over, but later on, after being pinned down, he admitted that one could "very easily" go through a window in the back of the cab and climb from there onto the coal car. Again the fireman, McClure, testified that there was no one else on the coal car aside from the four boys clinging to the left front side, yet later on he stated that he knew that there were boys on the back of the car too. How could he know unless he had seen them? Furtherfore, although he testified that he could see the top of the coal car, McClure was unable to state positively whether or not there was any one there. And at another time McClure testified that Donald Rice was one of the boys clinging to the left front side of the coal car but, on being quizzed by the court, had to admit that at the time he did not know Donald Rice from any of the other boys and, therefore, could not state whether for a fact the appellant was one of the four boys he saw. Surely the acceptance of the testimony of these two witnesses which was conflicting and at points evasive amounted to an abuse of discretion in face of the doubt which must have been in the court's mind as to whether or not there was an adult person on top of the coal car.

■ Furthermore, it is proper to infer that the statement made by the lower court that, " * * * This is a case which if there were liability would entail a very large judgment against the Government because it is a distressing accident and one which, if caused by any fault, the boy should have a large verdict * * *" indicates that it was influenced in its conclusions by the amount of the damages, and that this consideration overrode the doubts that must have existed in its mind. The amount of damages, however, should have no part in a court's judicial determination of facts and law, and it is improper to consider them in reaching a decision.

Therefore, for the foregoing reasons, we reverse and remand this case for a new trial.

Reversed and remanded.