NATIONAL TIRE DEALERS & RETREAD-ERS ASSOCIATION, INC., Appellant,

v.

G. D. C. CORPORATION and Square Deal Trucking Co., Inc., Appellees.

No. 2265.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 27, 1958.

Decided Jan. 19, 1959.

Robert L. Ackerly, Washington, D. C., for appellant.

Lawrence T. Scott, Washington, D. C., with whom Albert E. Brault and Denver H. Graham, Washington, D. C., were on the brief, for appellee G. D. C. Corp.

H. George Schweitzer, Washington, D. C., with whom W. Cameron Burton and Thomas B. Heffelfinger, Washington, D. C., were on the brief, for appellee Square Deal Trucking Co., Inc.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant, hereafter referred to as the Association, leased office space in an office building from appellee G. D. C. Corporation, hereafter referred to as the Corporation. On August 8, 1957, a shipment of sixteen cartons of tire "wrap-a-rounds"—an advertising emblem used by members of the Association—arrived at the delivery area of the building, a room at the rear facing an alley. An employee of the Corporation notified Mr. Wagner, an official of the Association, that the shipment had arrived, and he went to the room, counted the cartons, and signed a receipt. At that time, according to Mr. Wagner, the cartons were piled up against the back wall of the room.

Later in the day, at approximately 4:00 or 4:30 p. m., after he had ascertained that he could not have the cartons taken to the warehouse until the next day, Mr. Wagner called the office of the superintendent of the building and asked, "would it be all right to leave them in their space overnight, and let them be picked up the following day for delivery to our warehouse." The person answering the telephone stated he knew where the cartons were and that it was all right to leave them. The person answering was Edwards, a porter at the

building. Edwards reported the conversation to Aldrich, the assistant engineer or superintendent of the building, and Aldrich said "Okay."

The next morning between 8:00 and 8:30 a. m. Miles, a truck driver of appellee Square Deal Trucking Co., hereafter called the Trucking Company, picked up the trash from the delivery room.[1] He testified he took all the trash, including the cartons which he said he found in and on the trash receptacles. No other person was present when he gathered up the trash.

Later in the day Wagner learned that the cartons were missing and a search was instituted by Mr. Yoho, the building superintendent. As a result the cartons were found at the trash dump and those which could be salvaged were returned.

This action was brought by the Association against both the Corporation and the Trucking Company for damages in excess of $1,000. At trial the Association called Wagner, its own witness, and in addition thereto, as adverse witnesses, Edwards, Aldrich, Yoho and Miles. At the conclusion of plaintiff's evidence the trial court, sitting without a jury, granted motions by both defendants to dismiss. This appeal followed.

At the outset we must consider what standards are to be applied in reviewing the action of the court in a nonjury case in dismissing plaintiff's case at the conclusion of plaintiff's evidence.

In 1945, in Merriam v. Sugrue, D.C. Mun.App., 41 A.2d 166, we ruled that in a nonjury case the court had no power at the conclusion of a plaintiff's case to weigh the evidence and make findings of fact; that at that stage a plaintiff is entitled to have his evidence viewed in the light most favorable to him with all reasonable inferences in his favor. We adhered to this

---

1. In the testimony this room was variously called the delivery room, the shipping room and the trash room. It is large enough for two automobiles and contains receptacles for trash from the building. At night it is locked by means of a garage-type pull-down door.

view in subsequent cases. See Carow v. Bishop, D.C.Mun.App., 50 A.2d 598; Rieffer v. Hollingsworth, D.C.Mun.App., 52 A.2d 632; Taylor v. United Broadcasting Co., Inc., D.C.Mun.App., 61 A.2d 480. In the last-named case Judge Clagett dissented. He felt that the 1948 amendment to Federal Rule of Civil Procedure 41(b), 28 U.S.C.A., had made clear that under the federal rule the court in a nonjury case could at the close of plaintiff's case determine the facts and render judgment against the plaintiff, and that the Municipal Court, whose rules closely followed the federal rules, had the same power, even though at that time the Municipal Court had not changed its rule to conform to the 1948 amendment to Federal Rule 41(b). Since that decision the Municipal Court has amended its rule 41(b) so that it is practically identical with the present federal rule, but the scope and effect of the amended rule has not been before us. However, in Nadell v. Nadell, D.C.Mun.App., 131 A.2d 921, we held that the Domestic Relations Branch of the Municipal Court has the power in a proper case to make findings of fact at the close of plaintiff's case because the statute creating that branch specifically provided that it should be governed by the applicable Federal Rules of Civil Procedure, and Federal Rule 41(b) is now generally held to authorize such procedure.

In view of the fact that the trial court has amended its Rule 41(b) to conform to the federal rule we hold that the trial court in an action tried to the court, when the plaintiff has completed the presentation of his evidence, may make findings of fact and render judgment on the merits against the plaintiff.

We add, however that this power should be sparingly exercised, for we adhere to our former view that sound procedure in most cases requires withholding adjudication on the merits until both sides have presented their evidence. In the present case we cannot say it was improper to make findings of fact at the close of the plaintiff's case because the trial court felt that with the testimony of the adverse witnesses it had heard "substantially all of the evidence," and that conclusion is not disputed here. However, we think that even in this case it would have been better practice to have heard all the evidence. If substantially all had been heard, it would not have taken much time to have heard the balance. A judgment rendered on all the evidence is likely to be more sound than one rendered on less than all.

Our question then is not whether plaintiff's evidence made out a prima facie case, but rather whether the trial court's findings have support in the evidence.[2] The Corporation's motion to dismiss was based on the claim that there was no proof of a bailment. The Trucking Company's motion was based on the claim that there was no proof of negligence on its part.

The trial court found: (1) that "plaintiff merely asked permission to place this merchandise in this room overnight," and "plaintiff was just allowed to place the merchandise in this room;" and (2) "that there was no negligence." We understand the effect of these findings to be (1) that the Corporation was absolved from liability because there was no bailment, and (2) that the Trucking Company was absolved because of no negligence on its part.

The Corporation argues that the finding in its favor should be sustained because there was not sufficient evidence of delivery or acceptance of the cartons so as to constitute a bailment. Its contention is that its agent had no authority to bind it because (1) he was only a porter, and (2) the lease between the Corporation and the Association prohibited any storage arrangement. Assuming that the porter's duties and authority were limited to keeping the building clean, nevertheless, when he made the arrangement with the Association he was acting as agent for the Corporation and his act was reported to and ratified by

2. Huber v. American President Lines, Ltd., 2 Cir., 240 F.2d 778.

Aldridge. Aldridge was in charge of the building after Yoho, the superintendent, had left for the day, and we think it beyond question that he had authority to bind the Corporation in a matter such as this. Aldridge admitted that he said it was all right to leave the cartons in the room overnight, and that he forgot to leave a note for Yoho telling him of the arrangement.[3]

■ Thus we have the situation of the cartons being left in the receiving room with permission of the Corporation which had complete control over the room. To use the words of the trial court, the Association asked permission to leave the merchandise in the room overnight and was allowed to do so. This was sufficient to constitute a bailment and it was error to dismiss the action against the Corporation without a showing of due care on its part.

For its claim that the Association's lease prohibited any such arrangement as was made, the Corporation relies on that portion of the lease which provided:

"No space in the building shall be used for manufacturing, for the storage of merchandise, or for the sale of merchandise, goods, or property of any kind."

It is evident to us that this prohibition restricts the use by a tenant of space leased to it and does not purport to limit the landlord in its use of that portion of the building over which it has exclusive control. Furthermore, it is extremely doubtful that the mere overnight keeping of goods constitutes "storage of merchandise." We find nothing in this provision of the lease which legally prevented the parties from making the arrangement they did.

■ With respect to the Trucking Company, the trial court found that when the truck driver arrived the cartons had been mixed with the trash and that there was no negligence on his part in carrying away

everything, including the cartons. We cannot say that this finding has no support in the evidence.

Judgment in favor of G. D. C. Corporation reversed with instructions to grant a new trial.

Judgment in favor of Square Deal Trucking Co., Inc., affirmed.

___

**3.** Yoho customarily arrived at the building early in the morning and opened the door to the receiving room at seven o'clock.