**Hugh F. KEEFER, Appellant,**

v.

**KEEFER AND JOHNSON, INC., et al.,
Appellees.**

**No. 9080.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1975.

Decided July 20, 1976.

Werner Strupp, Washington, D. C., for appellant.

Daniel Webster Coon, Washington, D. C., for appellees.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

The trial judge, sitting without a jury, granted appellees' motion for a directed verdict at the close of appellant's evidence.

In this appeal, appellant contends that he adduced sufficient evidence of a breach of his employment contract to withstand appellees' motion. We treat the action as a motion to dismiss, pursuant to Superior Court Civil Rule 41(b), at the close of plaintiff's case, and reverse the judgment.

In the spring of 1971, appellant approached appellee Leland Johnson with a proposal to organize an interior furnishing business. After further negotiations, the parties reached a tentative plan for financing the venture. Articles of incorporation were filed on September 16, 1971, and the corporation of Hugh F. Keefer, Inc.[1] was formed. Appellant and Mr. Johnson, both of whom subsequently served as corporate directors, executed the first of two shareholders' agreements on September 28, 1971. Paragraph 6 of the agreement contained a clause regarding Keefer's compensation for the performance of his corporate responsibilities. It provided in general for a term of five years at an annual salary of $18,000 for the first year, and a salary based on a profit-loss formula for the second through the fifth year. On October 1, 1971, appellant, on behalf of the corporation, executed an employment contract which detailed the general provisions of the shareholders' agreement. It provided that appellant Keefer would serve as the chief executive officer of the corporation for a term of five years at a base salary of $18,000 per year for each of the five years, plus business expenses. Appellant's actual salary for the second through the fifth year was to fluctuate within specified limits, depending upon the corporation's annual financial report. At trial, appellant did not introduce any evidence as to the corporation's net operating profit or loss.

On October 15, 1971, the initial shareholders' agreement of September 28, 1971, was voided and a second shareholders' agreement was executed. It contained an amended clause regarding the conditions of appellant's employment. Based on the provisions of the first shareholders' agreement, the second agreement provided in general terms for the corporate employment of Keefer for a term of five years at an annual salary of $18,000 for the first year. His salary for the second through the fifth year was to be based upon a formula to be approved by the board of directors and adjusted pursuant to the annual financial report.

Appellant and the corporation's counsel testified that the business encountered several problems after incorporation. Financial resources of the business were rapidly depleted. Mr. Johnson personally loaned the business $50,000 and co-signed a bank loan of $18,000 with appellant to provide needed working capital. Appellant withdrew an unauthorized $1,000 loan from the corporate bank account. In August 1972, personal disputes between the Johnsons and Keefer arose over appellant's handling of personnel and the financial and administrative affairs of the business. These difficulties resulted in a resolution dated November 18, 1972, modifying appellant's employment contract of October 1, 1971. Two days later, the board of directors, with the exception of appellant, approved an amendment to Keefer's employment agreement relieving him of the office of president and relegating him to the position of vice-president. The remainder of the employment contract, including the salary provisions, was confirmed in all respects.

Appellant testified that he functioned as vice-president and salesman for approximately one week and that he then refrained from further work with the corporation. On December 1, 1972, the board of directors, through counsel, informed appellant that his employment contract of October 1, 1971, had been terminated for cause. A formal resolution dated December 11, 1972, effectuated appellant's termination as

1. In conjunction with a 1972 redistribution of the corporate stock, the name of the corporation was changed to Keefer and Johnson, Inc.

**174**

president of the corporation. The corporation is still in existence but not active in any business venture.

The trial court ruled that the second shareholders' agreement of October 15, 1971, repealed the former shareholders' agreement of September 28, 1971, as well as the employment contract of October 1, 1971. Pursuant to the provisions of the October 15, 1971, shareholders' agreement, which the trial court ruled was controlling in this situation, appellant's compensation was predicated upon a formula which required board approval. The court noted that no statement of the corporation's financial status was introduced into evidence and therefore no damages for breach of employment contract could be computed or awarded to appellant.

■ The sole issue for our consideration is whether the trial court erred in granting appellees' motion for a directed verdict. As styled, that motion in a nonjury case is a misnomer and will be treated as a motion to dismiss pursuant to Superior Court Civil Rule 41(b).[2] *See Evans v. Byers,* D.C.App., 331 A.2d 138, 139 (1975).[3] *See also James v. DuBreuil,* 500 F.2d 155, 156 n. 2 (5th Cir. 1974); *Federal Insurance Co. v. Hardy,* 222 F.Supp. 68, 69 (E.D.Mo.1963); *William T. Young, Inc. v.*

*Simpson,* 111 R.I. 12, 298 A.2d 526, 528 (1973); Wright and Miller, Federal Practice and Procedure: Civil § 2371 at 220 (1971); C. Wright, Federal Courts § 96 at 428 (2d ed. 1970). We have previously articulated the procedures for administering this rule in *Warner Corporation v. Magazine Realty Co.,* D.C.App., 255 A.2d 479, 481 (1969).

Under Rule 41(b) . . . [note 2, *supra*], which is modeled after Rule 41(b) of the Federal Rules of Civil Procedure, the trial court in a non-jury case may find for the defendant on the merits when the plaintiff has rested, even if the plaintiff has made out a prima facie case. . . . [When] the trial court acts pursuant to this provision, it does not view the evidence in the light most favorable to the plaintiff but weighs the evidence and considers the credibility of the witnesses as it would at the end of the trial.[4] . . . If the trial court finds plaintiff's evidence insufficient to prevail on the merits and grants defendant's motion, the trial court *must* make findings of fact. . . . [Citations omitted; emphasis in original.]

*See also William T. Young, Inc. v. Simpson, supra,* 298 A.2d at 528; Annot., 55 A.L.R.3d 272, 281–87 (1974).

2. Super.Ct.Civ.R. 41(b) provides in pertinent part:

(b) Involuntary Dismissal: Effect Thereof. . . . After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). . . . [A] dismissal under this subdivision . . . operates as an adjudication upon the merits.

3. Under prior case law, appellees' motion for a directed verdict would have been denomi-

nated as a motion for a finding for defendant. *See Taylor v. United Broadcasting Co.,* D.C. Mun.App., 61 A.2d 480, 482 (1948). *See also Petty v. Rowe,* D.C.Mun.App., 91 A.2d 331, 332 (1952).

4. "This provision has come in for severe attack from a noted scholar [Steffen, *The Prima Facie Case in Non-Jury Trials,* 27 U.Chi.L.Rev. 94 (1959)], who contends that it is artificial to speak of weighing the evidence when nothing has been heard from the other side against which plaintiff's evidence can be weighed, and argues that where plaintiff has made out a prima facie case, the court should hear all the evidence from both parties, and thus have the whole controversy before it, prior to determining which side should win." [C. Wright, Federal Courts, *supra* at 429 (footnote omitted).]

■ The record in the instant case reveals that the trial court treated appellees' motion as one for a directed verdict in a jury case.[5] *See* Super.Ct.Civ.R. 50(a). The judge stated that "for the purposes of this motion, I have to resolve . . . the evidence and inferences thereof in favor of the [appellant] . . . ." Additionally, the court made no findings of fact. *See* Super.Ct.Civ.R. 41(b) and 52(a). Such a standard was clearly improper when ruling on the motion in the instant case. *See William T. Young, Inc. v. Simpson, supra,* 298 A.2d at 528. "In a non-jury case a motion for dismissal for insufficiency of the evidence, under Rule 41(b), takes the place of a motion for a directed verdict in a jury case." C. Wright, Federal Courts, *supra* at 428.

■ Prior case law in this jurisdiction held that "a motion for a finding for defendant at [the] close of plaintiff's evidence [which frequently was improperly denominated as a motion for a directed verdict] in a non-jury case is governed by the same rules controlling a motion for directed verdict in a jury case". *Carow v. Bishop,* D.C.Mun.App., 50 A.2d 598, 601 (1946). *See also Evans v. Byers, supra* at 139; *Ramos v. Ramos,* D.C.App., 291 A.2d 198 (1972); *Warner Corporation v. Magazine Realty Co., supra* at 480 n. 2; *Petty v. Rowe,* D.C.Mun.App., 91 A.2d 331, 332 (1952); *Rieffer v. Hollingsworth,* D.C. Mun.App., 52 A.2d 632, 634 (1947); *Merriam v. Sugrue,* D.C.Mun.App., 41 A.2d

166 (1945). Rule 41(b) modifies this case law. Pursuant to this rule the trial court is no longer required to take plaintiff's evidence as true, draw reasonable inferences in plaintiff's favor, or limit evaluation of the evidence to legal sufficiency, as suggested by the following cases: *Ramos v. Ramos, supra* at 200; *Warner Corporation v. Magazine Realty Co., supra* at 480; *Hamilton v. Blankenship,* D.C.Mun.App., 173 A.2d 737 (1961); *Petty v. Rowe, supra* at 332; *Taylor v. United Broadcasting Co.,* D.C.Mun.App., 61 A.2d 480 (1948); *Rieffer v. Hollingsworth, supra* at 634; *Carow v. Bishop, supra* at 601. *See William T. Young, Inc. v. Simpson, supra,* 298 A.2d at 528.

■ In reviewing the record we note that appellant made out a prima facie case for breach of employment contract. The record indicates that all parties treated the employment contract of October 1, 1971, as controlling and binding upon the corporation.[6] On the same date as the execution of the second shareholders' agreement, the minutes of the board meeting affirm appellant's employment contract in all respects.

Without resolving the liability issue, the trial court grounded its decision on an inability to determine damages without further corporate financial evidence. We disagree and note that the trial court misconstrued both the facts and the law. First, the employment contract of October 1,

5. The court in *William T. Young, Inc. v. Simpson, supra,* 298 A.2d at 528, defines a motion for a directed verdict in a jury case (Rule 50(a)) as being different than a motion to dismiss in a nonjury case (Rule 41(b)).

A motion for a directed verdict . . . is the procedure whereby, at the close of an opponent's evidence or at the close of all the evidence, either a plaintiff or a defendant, in a *jury* but *not in a nonjury* case, may request the trial justice to determine whether there is any legal evidence sufficient to create an issue of fact for the jury. In performing that function, the trial justice may not weigh the evidence or pass upon the credibility of the witnesses

for to do so would be to invade the jury's province and that is impermissible. His role, therefore, is limited to viewing the evidence and the inferences to which it is reasonably susceptible in the light most favorable to the party against whom the motion is made. . . . [Emphasis in original.]

6. Appellant's trial court exhibits Nos. 3 and 4 represent attempts by the corporation's counsel to amend the October 1, 1971, employment contract without altering the compensation provisions. The compensation provisions of the employment contract were not altered during appellant's tenure.

1971, specified a base salary of $18,000 for each of the five years, which may be construed as a liquidated amount of damages. Additionally, an auditor's report of projected corporate income was admitted into evidence to establish anticipated corporate earnings.[7] Second, "[i]t is established law that where a plaintiff proves a breach of a contractual duty he is entitled to damages." *Roth v. Speck*, D.C.Mun.App., 126 A.2d 153, 155 (1956).[8] The amount of damages "should have no part in a court's judicial determination of facts and law, and it is improper to consider them in reaching a decision." *Rice v. United States*, 85 U.S. App.D.C. 404, 408, 179 F.2d 26, 30 (1949).

◼ Although appellant made out a prima facie case it does not mean that he will necessarily prevail on a Rule 41 motion to dismiss. The appropriate standard allows the trial court to weigh evidence and evaluate credibility without making inferences for the non-moving party. The trial court's failure to make required findings prevents us from undertaking further appellate review.[9] *See Warner Corporation v. Magazine Realty Co., supra* at 481.

"The usual procedure in such situations is to remand the case to the trial court for findings.[10] . . . However, other factors, such as lapse of time between remand and trial or where credibility of witnesses may be the crucial issue, may warrant remanding for a new trial." *Warner Corporation v. Magazine Realty Co., supra* at 481 (citation omitted). *See also Nadell*

7. "'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.'" *District News Co. v. Goldberg*, D.C.Mun.App., 107 A.2d 375, 377 (1954), quoting *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

8. "If the plaintiff proves a breach of the contract he is entitled at least to a recovery of nominal damages. . . . The employee need only prove the breach and the contract price when he is wrongfully discharged and

*v. Nadell*, D.C.Mun.App., 131 A.2d 921 (1957); *Kruger v. Purcell*, 300 F.2d 830 (3d Cir. 1962); Wright and Miller, Federal Practice and Procedure, *supra* at § 2577. In light of the fact that much time has elapsed since the October 1974 trial, we are compelled to reverse and remand the case for a new trial.

*So ordered.*

this will warrant a judgment in his favor for all future installments due him, reduced to present value." D. Dobbs, Remedies §§ 12.4 at 817, 12.25 at 924–25 (1973).

9. "Such findings are intended to aid the appellate court by affording it a clear understanding of the basis of the trial court's decision, and to make definite what was decided for purposes of res judicata and estoppel." C. Wright, Federal Courts, *supra* at 429.

10. *See also Group Ass'n Plans, Inc. v. Colquhoun*, 151 U.S.App.D.C. 298, 300–01, 466 F. 2d 469, 471–72 (1972); *Sellers v. Wollman*, 510 F.2d 119, 121–22 (5th Cir. 1975).