BAY GENERAL INDUSTRIES, INC., et al., Appellants,

v.

Rodger JOHNSON et al., Appellees.

No. 11894.

District of Columbia Court of Appeals.

Argued May 8, 1979.

Decided Aug. 14, 1980.

---

Walter T. Charlton, Washington, D. C., for appellants.

No brief or appearance filed for appellees.

Before KELLY, NEBEKER and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellants Bay General Industries, Inc. ("Bay General"), a Maryland Corporation that manufactures electronics components, and its chief officers, Arthur and Frieda

Houseman, seek reversal of the trial court's December 17, 1976 order (entered at the close of appellants' evidence) dismissing their action requesting $150,000 damages, primarily in the form of lost profits, for unlawful detainer, fraudulent conversion, and intentional interference with the execution of a replevin writ.[1] The action was originally brought in replevin, for return of a punch press that, although paid for, was never delivered to Bay General by the sellers, appellees Phyllis and Rodger Johnson and Continental Properties Credit Corporation, Inc. ("CPC").[2]

We reverse and remand for reconsideration of appellants' claim in tort and retrial of the issue of damages for unlawful detention. We also instruct the trial court to consider the possibility of awarding punitive damages and/or attorneys' fees.

## I

Appellants' evidence at trial showed that appellant Arthur Houseman needed certain equipment for his new manufacturing business, Bay General.[3] After negotiating with appellee Rodger Johnson[4] for three pieces of machinery, including a Model 18E Diacro Turret Punch Press, he contacted the Phillips Machine and Supply Corporation, Inc. ("Phillips") and asked it to finance the $9,500 purchase.

On October 2, 1973, Phillips' president, Albert Phillips, accompanied Houseman and Johnson to view the equipment; in the presence of both, he discussed Phillips' financing arrangement with Bay General.[5]

---

1. Appellants also seek reversal of the trial court's repeated denials of their motions for leave to amend. See Section V infra.

2. Mrs. Johnson was apparently, at the time of the action, the president and sole owner of CPC.

3. All of the negotiations regarding the purchase and delivery of the press were between Johnson and Houseman.

4. Bay General was incorporated on October 2, 1973.

5. The finance arrangement (denominated a "lease") required the Housemans (as "lessors")

to make 60 monthly payments of $212.98 (a total of $12,778.80). Appellants made an initial payment of $2,064.90, which represented a $1,000 security deposit and the first and last four months' rent, on October 2. Phillips agreed to release all liens on the property at the end of the lease period, after a final payment of $950.

The lease, along with a Financing Statement stating that Phillips was the secured party, was filed on October 24, 1973 in Maryland, appellants' principal place of business, pursuant to the U.C.C. § 9–402. Cf. D.C.Code 1973, § 28:9–402.

The lease was executed the same day. Although Johnson apparently agreed to deliver the equipment to Bay General on the following Saturday, he did not show up. He delivered two of the three pieces of equipment the following week and took Phillips' check for $9,850 (which included a $350 delivery fee); although he cashed the check on October 15, the punch press was never delivered, despite Bay General's repeated attempts to obtain it.

By November 19, appellants found themselves falling behind in their production schedule.[6] Unable to find a replacement for the missing press, and having been told by Johnson that he never intended to deliver it, Bay General (with Phillips as co–plaintiff) brought a replevin action against Johnson. A protective order was issued the same day; it was served, along with the summons and complaint, upon Phyllis Johnson on November 26.

The record shows that Johnson appeared and testified on December 14. On December 26, appellants filed a $1,000 surety bond and the replevin writ was issued. The writ was to be executed at 615 15th Street, Northeast, premises owned by CPC (whose corporate address was the same as the Johnsons'). It was returned unexecuted and was reissued on January 24.

However, according to a trial court order filed May 13, 1974 issuing a writ of replevin

against CPC and an order to show cause for contempt of the court's November 19 order against Johnson, Johnson "refused to unlock the premises [for the United States Marshals], stating [that] he did not know who owned the property." [7]

On May 16, the May 13 show cause order was served on Johnson. A hearing was begun on May 23, continued until May 30, and taken under advisement by the trial court. Another show cause order, directed to both CPC and Johnson, was issued on August 30. There is no record of the disposition of either contempt proceeding.

Having failed to obtain execution of the writ, appellants filed several motions seeking leave to amend their replevin complaint.[8] The first motion, seeking to add a count for wrongful possession and damages of $110,000, was granted on October 3, 1974. The second, adding: (1) Phyllis Johnson as a party defendant, (2) a cause of action for intentional interference with the execution of the replevin writ, (3) a tort action for conspiring to defraud appellants of possession, and (4) a damages claim of $150,000, was granted on March 31, 1975.

In the meantime, numerous cross requests for discovery, motions to compel production of documents and answers to interrogatories, and oppositions thereto, were filed and heard.

---

Section 2(B) of the lease states:

  If the equipment is not properly installed, does not operate as represented or warranted by supplier [Astronautics Research Inc., Rodger Johnson, Salesman] or is unsatisfactory for any reason, lessee shall make any claim on account thereof solely against supplier and shall, nevertheless, pay lessor all rent payable under this lease, lessee hereby waiving any such claims as against lessor. . . . Lessor hereby agrees to assign to lessee, solely for the purpose of making and prosecuting any said claim, all of the rights which lessor has against supplier for breach of warranty or other representation respecting the equipment. *Lessor shall have no responsibility for delay or failure to fill the order.* [Emphasis added.]

An officer of Phillips testified that six copies of the lease were made up; one, the purchase order, was to be sent to Johnson, the "establishment that [was] selling the equipment."

6. Houseman testified that production "almost came to a standstill" and that Bay General's delivery schedule was delayed by seven or eight months primarily because they had to perform numerous "credits"–representing Bay General's contractual agreements to manufacture electronics components, (several of which were introduced into evidence, without objection)–by hand, rather than with the punch press.

7. Appellants allege that Johnson took the press to Maryland, and attempted to sell it to someone else. He apparently later claimed that it had been stolen.

8. Approximately seven or eight months after filing their initial complaint, appellants were able to find a new punch press, which they also "leased" from Phillips. *See* note 5 *supra.* They continued making payments on the first lease as well.

On July 28, 1976, appellants filed another motion for leave to amend their complaint. It was denied on August 30; a motion for relief from the denial was filed on September 20 and denied on October 12, 1976. Another motion for relief was denied on October 15. A notice of appeal was filed on November 11.[9] On November 12 and 16, appellants again filed motions to amend the complaint.

On November 17, 1976, appellees' motion for summary judgment was granted as to count "A" (replevin) and denied as to count "B" (tort). Cross motions for reconsideration were denied and the case was continued until November 22 for a jury trial.

The case was apparently settled among Phillips, Phyllis Johnson, and CPC on November 20; trial was continued until November 26 to allow Rodger Johnson time to obtain his own counsel. The case again was continued at Johnson's request, until December 15, when Johnson's motion to assign the case to the non-jury calendar was granted by consent.

On December 17, the Housemans' and Bay General's cause of action were dismissed; their oral motions for reconsideration of the dismissal and to amend the complaint to add punitive damages, attorney's fees, costs, and a count of malicious interference with a contract were both denied.

Phillips, the remaining plaintiff, was subsequently awarded the value of the punch press, estimated at $6,800, along with $100 storage costs, provided that it returned the two pieces of equipment that appellees had delivered to Bay General in October 1973.[10] Appellants filed notice of this appeal on January 17, 1977.

## II

■ A defendant's motion for judgment at the close of the plaintiff's evidence in a non-jury case, such as this, is governed, not by the Super.Ct.Civ.R. 50(a) directed verdict standard but, rather, by Super.Ct.Civ.R. 41(b) providing for involuntary dismissal.[11] *Marshall v. District of Columbia*, D.C.App., 391 A.2d 1374 (1978); *Keefer v. Keefer & Johnson, Inc.*, D.C.App., 361 A.2d 172 (1976); *Warner Corp. v. Magazine Realty Co.*, D.C.App., 255 A.2d 479 (1969).

Under Rule 41(b), the trial court may not dismiss the action unless "upon the facts and the law the plaintiff has shown no right to relief." On granting the motion, the court is required to make findings as provided in Rule 52(a).[12]

■ On review, the trial court's findings and conclusions will not be disturbed "unless clearly erroneous, with due regard being given to the opportunity of the trial court to judge the credibility of the witnesses." *Marshall v. District of Columbia, supra* at 1379–80 (quoting *Keefer v. Keefer & Johnson, Inc., supra* at 176 n.9). However, we are aware that a dismissal with prejudice under Rule 41(b) is a drastic remedy, to

9. This court dismissed appellants' interlocutory appeal in an unpublished order dated December 22, 1976, "[o]n consideration of the unopposed motion of appellee[s]."

10. The theory of recovery justifying this relief is not clear. The court apparently sought to rescind the entire sales contract; however, it awarded Phillips less than its purchase cost under the contract. It also awarded Phillips storage costs, despite the fact that Bay General was, as far as we can determine, in possession of the other two machines at all times. It also made the $6,800 award subject to a $2,000 reduction if Phillips did not succeed in getting Bay General to return the other items.

11. Both appellants and the trial court erroneously applied a Rule 50(a) standard, the court stating at trial that it "must view the evidence at this stage of the proceedings in light most favorable to the plaintiffs."

12. The trial court's failure to make findings pursuant to Rule 52(a) necessitated this court's unpublished order of August 10, 1978, directing the trial court to prepare and file specific findings of fact and conclusions of law. *See Warner Corp. v. Magazine Realty Co., supra* at 481 (if the trial court grants defendant's motion to dismiss a non-jury case, it "*must* make findings of fact") (emphasis in original; citation omitted).

Our review of the trial court's action is, therefore, based upon the findings and conclusions set forth in its September 11, 1978 judgment, filed pursuant to this court's order.

be sparingly exercised. *Darden v. Capitol Cab Cooperative Ass'n, Inc.*, D.C.Mun.App., 154 A.2d 352, 354 (1959); *National Tire Dealers Retreaders Ass'n, Inc. v. G.D.C. Corp.*, D.C.Mun.App., 147 A.2d 869, 871 (1959).

We conclude that appellants' evidence clearly established that they were entitled to relief; the trial court's conclusions to the contrary–that the action by appellants was barred by their lack of contract privity with appellees or by their lack of legal title [13] –are plainly erroneous. *See* Part III *infra.* We also conclude that appellants' relief may include consequential, as well as incidental, damages [14] arising from the appellees' unlawful detention of the punch press, *see* Part IV *infra,* and that an award of punitive damages may also be appropriate for consideration by the trial court in this case.[15] *See* Part V *infra.*

### III

At trial, the court stated that it "[could not] see under any stretch of imagination how [Bay General could] legally hold [Johnson] for any damages that they may have suffered." It also concluded that the lease agreement "has nothing in the world to do with the [sales] agreement between [Phillips] and [Johnson] . . ." and that, viewing the case as a breach of contract action between Johnson and Phillips, appellants' lack of contract privity precluded

them from maintaining an action against Johnson. These conclusions are incorrect.

■ As this court recently stated, "[o]ne who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." *Western Union Telegraph Co. v. Massman Construction Co.*, D.C.App., 402 A.2d 1275, 1277 (1979) (citing *Moran v. Audette*, D.C.App., 217 A.2d 653, 654 (1966); *Aetna Casualty & Surety Co. v. Kemp Smith Co.*, D.C.App., 208 A.2d 737, 738–39 (1965)). Lack of contract privity has not barred a suit for breach of contract in this jurisdiction since at least 1949, *see Owens v. Liff*, D.C.Mun. App., 65 A.2d 921 (1949), and third party beneficiary actions were expressly sanctioned in 1965. *See Aetna Casualty & Surety Co. v. Kemp Smith Co., supra. See generally* 2 Williston on Contracts § 354 at 821 *et seq.* (1959).

■ Having failed to obtain possession of the punch press (specific performance of the contract) by means of their replevin attempts, appellants were not barred from subsequently proceeding under a third party beneficiary contract theory for the damages caused by its continued unlawful detention or, under a tort theory, for the harm arising from the intentional tortious acts of the appellees.[16]

13. The trial court concluded, "that since [appellants] were not in privity of contract with the defendant Rodger Johnson, they could therefore not maintain this action against him."

14. Our conclusion that punitive damages were adequately alleged in the amended complaint, *see* Part V *infra,* obviates the need to consider whether the trial court's repeated denials of appellants' motions for leave to amend the complaint were an abuse of discretion. See generally *Bennings Assocs. v. Joseph M. Zamoiski Co.*, D.C.App., 379 A.2d 1171, 1173 (1977) for a discussion of Super.Ct.Civ.R. 15(a), governing requests for leave to amend the complaint. *See also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

15. The court concluded, without any evidentiary basis (since Phillips was still receiving its payments under the lease with Bay General) that Phillips "suffered monetary damages be-

cause of the failure of . . . Johnson to deliver the . . . press."

16. The trial court's findings and conclusions never addressed the sufficiency of appellants' evidence *regarding their cause of action in tort.* Normally, this would necessitate a remand for the entry of such findings and conclusions. However, since this has already been done once in this case, *see* note 12 *supra,* and given the lapse of time between trial and this remand, the trial court should, on remand, reconsider appellants' claims for fraudulent conversion or intentional interference with the execution of the replevin writ (count "B" of their amended complaint).

We reiterate that an action in replevin "is not a substitute for *or bar to* an action in tort for consequential damages arising from the malicious acts attendant upon the wrongful seizure and dispossession of the property," *Wardman– Justice Motors, Inc. v. Petrie* 59 App.D.C. 262,

■ D.C.Code 1973, § 16–3705 does not preclude either action; it merely states that, when a replevin writ is returned unexecuted (and the defendant, as here, has been served with the complaint, affidavit and summons), "the plaintiff may prosecute the action for the value of the property *and damages for detention* or he may renew the writ in order to obtain possession . . ." (Emphasis added). This section has not been interpreted to bar either a separate alternative action after an unexecuted replevin judgment or amendments to the original action; on the contrary, "recognizing that seizure may be impossible, [it] makes provision for maintenance of the action where [it] is not made and contemplates that in such a case the plaintiff shall have only a money judgment" (as opposed to specific performance). *Byrne v. Tabet,* D.C.Mun.App., 50 A.2d 815, 816 (1947). As under § 16–3705, the measure of the judgment at law is stated to be "the value of the chattel and damages for its detention." *Id.*

IV ·

■ The measure of damages that may be awarded in the specific circumstances at issue here–when the property identified in a replevin writ is no longer subject to recovery–has never been expressly stated in this jurisdiction.[17] Two different measures, one contractual, one tortious, may theoretically

be applied. Practically, the chief difference between the two measures appears to be the foreseeability of the damages–tortious injuries need only be within the risk created by the action, whereas contract damages must be foreseeable.

Since we conclude that the action underlying appellants' replevin claim was, conceptually, one for the breach of a contract of which appellants were intended third party beneficiaries, a profitable starting point for determining the measure of damages is the scheme of remedies in Article Two of the Uniform Commercial Code ("UCC"), Sales, enacted in the District of Columbia as D.C.Code 1973, §§ 28:2–101 to 2–725. Under the provision governing buyer's remedies when the "seller fails to make delivery or repudiates" the contract, D.C. Code 1973, § 28:2–711, a buyer (or an intended third party beneficiary, like appellants) may either cover (*i. e.*, seek a replacement) and collect damages for non–delivery, §§ 28:2–711(1), –712, simply recover damages for non–delivery, § 28:2–713, or sue for specific performance or replevin, §§ 28:2–711(2)(a) or (b). If the buyer successfully sues for specific performance, which he or she may do if the goods are unique under § 28:2–716(1), or identified to the contract, § 28:2–501, he or she may also get damages "as the court may deem just," under § 28:2–716(2).[18]

---

39 F.2d 512 (1930); *Tribby v. O'Neal,* 39 App. D.C. 467 (1912), but do not decide whether appellant presented sufficient evidence to make out a claim for tortious damages in this case.

17. We also note that "[a] court may award compensatory damages against a losing party who has been held in contempt of court for willful disobedience of a court order, or who has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Lander v. Morton,* 171 U.S.App.D.C. 146, 149, 518 F.2d 1084, 1087 (1975) (citing *Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). We suspect, however, that these damages may well be exemplary, *see* Part V *infra*, rather than "compensatory."

18. We need not decide whether, in a replevin action brought solely under § 16–3701 *et seq.*, the court may deem the "detention" damages expressly awardable under the statute insuffi-

cient, and award other damages as well, including consequential damages, despite the contrary, pre–UCC, dicta in *Wardman–Justice Motors, Inc. v. Petrie, supra* 59 App.D.C. at 264, 39 F.2d at 514 (citing *Crockett v. Miller,* 112 F. 729, 735 (8th Cir.1901) (consequential damages "not proper . . . under the detention clause of the replevin act, but [are] proper . . . in [a] subsequent action for malicious trespass" when possession restored via the replevin action).

Section 16–3710, however, states (in pertinent part) that replevin "damages shall be the full value of the goods, if eloigned by the defendant, including, in every case, the loss sustained by the plaintiff by reason of the detention . . . ." This language seems to indicate that full *compensatory* damages may be awarded for the delay in performing, including consequential as well as incidental damages. The language in § 16–3712 implies that costs *even beyond* compensatory damages may be

If specific performance or replevin is not a realistic alternative, as here, the buyer may collect damages either for cover, § 28:2–711, or for non–delivery, § 28:2–713. Since there is no dispute that appellants succeeded in replacing the punch press, between six and eight months after appellees failed to deliver, § 28:2–712(2) may be applied:

> The buyer may recover from the seller as damages the difference between the cost of cover and the contract price *together with any incidental or consequential damages* as hereinafter defined (section 28:2–715), but less expenses saved in consequence of the seller's breach. [Emphasis added.]

Section 28:2–715 sets forth the measures of incidental, § 28:2–715(1), and consequential, § 28:2–715(2), damages. The latter include:

> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . ..

The measure of consequential damages [19] for breach of contract under the UCC does not differ from that developed in this jurisdiction's pre–UCC case law. *See, e. g., Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, D.C.App., 414 A.2d 834

(1980); *Sundown, Inc. v. Canal Square Associates*, D.C.App., 390 A.2d 421, 433 (1978); *Sears Roebuck & Co. v. Goudie*, D.C.App., 290 A.2d 826, 832, *cert. denied*, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972) (*as amended on denial of rehearing en banc*); *Rhodes v. Ritz Camera Centers*, D.C.Mun. App., 151 A.2d 262 (1959); *A.P. Woodson Co. v. Sakran*, D.C.Mun.App., 129 A.2d 175, 177 (1957).

In determining the amount of a damages award, of course, there must be no double recovery for the same injury "for a plaintiff is not entitled to be made more than whole unless punitive damages are warranted." *Franklin Investment Co., Inc. v. Smith*, D.C. App., 383 A.2d 355, 358 (1978) (citations omitted).

### V

We also conclude that the issue of punitive damages, which appellants unsuccessfully attempted to add to their complaint via repeated requests for leave to amend, was adequately raised in the amended complaint alleging fraud. "Since fraud provides a basis for the recovery of exemplary damages, it follows that an allegation of fraud is sufficient on [that] issue . . . .." *District Motor Co. v. Rodill*, D.C.Mun.App., 88 A.2d 489, 493 (1952).[20]

---

assessed "[i]f the defendant . . . has eloigned the things sued for," that is, "such damages as may compel the defendant to return the things." Presumably damages to compel return should be greater than either the market value of the goods *or* the plaintiff's pecuniary loss occasioned by deprivation.

19. The term "consequential" is generally used to describe what the treaties denominate "natural" or "general" damages, whereas "incidental" damages refer to the other "special" damages accompanying a breach of contract. Both incidental (special) and consequential (general) damages are intended to compensate a party for the loss incurred by the other's breach, *i. e.*, "compensatory." *See* 11 Williston on Contracts § 1344A at 229–31 (1968). It is generally said that incidental damages for breach of contract need not be foreseeable, whereas there is a well known two prong test for limiting consequential damages: (1) that the damages are caused by the breach and (2) that they may reasonably be supposed to have been in the contemplation of both parties at the time the

contract was formed. *Hadley v. Baxendale*, 9 Exch. 341 (1854).

20. We therefore need not review the propriety of the trial court's refusal to grant appellants leave to amend the complaint to add punitive damages. *See* note 14 *supra*. *See generally Foman v. Davis*, *supra* 371 U.S. at 182, 83 S.Ct. at 230 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (construing Fed.R.Civ.P. 15(a), the analogue to Super.Ct.Civ.R. 15(a), governing motions for leave to amend the complaint); *Bennings Assocs. v. Jospeh M. Zamoiski Co.*, *supra* at 1173 (leave freely granted when the interests of justice so require).

Similarly, we find that appellant's lack of success in attempting to amend the complaint to add *reasonable attorney's fees would not* have precluded such an award, in the discretion of the court, on these facts, given the fullness of their allegations as to appellees' fraudulent

*See Mark Keshishian & Sons, Inc. v. Washington Square, Inc., supra* at 842 (evidence sufficient to support award of punitive damages includes proof of fraud or deceit since fraud necessarily encompasses malice.)

■ There is no question that punitive damages may be recovered in certain circumstances, in both breach of contract and willful tort actions. *Id.; Brown v. Coates,* 102 U.S.App.D.C. 300, 303, 253 F.2d 36, 39 (1958). In tort actions, punitive or exemplary damages must be founded on the defendant's "outrageous conduct such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights." *Riggs National Bank v. Price,* D.C.App., 359 A.2d 25, 28 (1976); *see Wardman–Justice Motors, Inc. v. Petrie, supra.* In breach of contract cases, an intent to defraud or other "circumstances of extreme aggravation" may support a punitive damage award. *Cf. Minick v. Associates Inv. Co.,* 71 App.D.C. 367, 368, 110 F.2d 267, 268 (1940). Proof of fraud or malice "need not be by direct evidence but may appear from all the facts and circumstances of the case." *Franklin Investment Co., Inc. v. Smith, supra* at 359 (refusal to return plaintiff's personal property on demand indicative of a willful disregard for plaintiff's rights) (citations omitted); *Harris v. Wagshal,* D.C. App., 343 A.2d 283, 288 (1975) (punitive damages upheld when trial court found that married defendants "had purposefully acted with intent to hinder and defraud [the plaintiff] in his efforts to satisfy his judg-

ment" against a corporation which was used by the defendants as their personal instrumentality to protect them from the claims of the husband defendant's judgment creditors); *District Motor Co. v. Rodill, supra* at 493 (automobile dealer's deliberate switching of speedometer before selling car to plaintiff constitutes sufficient fraud or deceit to justify award of punitive damages).[21]

## VI

Having once before remanded this action for findings of fact and conclusions of law, we decline to do so again, despite the fact that the issues of appellant's tort and punitive damages claims were unaddressed by the trial court. Instead, because (1) the trial court's erroneous conclusion that appellants were entitled to no relief blocked consideration of much evidence relevant to their legitimate claims, and (2) "other factors, such as the lapse of time between remand and trial . . . [and the fact that] the credibility of witnesses may be the crucial issue," we remand for a new trial. *Keefer v. Keefer & Johnson, Inc., supra* at 17 (quoting *Warner Corp. v. Magazine Realty Co., supra* at 481).

*So ordered.*

and malicious acts–particularly their allegation that appellees intentionally interfered with the execution of the replevin writ.

Although this jurisdiction follows the "American Rule" that " 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser.' " *Sundown, Inc. v. Canal Square Assocs., supra* at 430 (quoting *Alyeska Pipeline Service Co. v. The Wilderness Society, supra* 421 U.S. at 247, 95 S.Ct. at 1616, exceptions are occasionally allowed, as when a party brings or maintains an unfounded suit or withholds action to which the opposing party is entitled in bad faith, vexatiously, wantonly, or for oppressive reasons. *1901 Wyoming Ave. Cooperative Ass'n v. Lee,* D.C.App., 345 A.2d 456 (1975); *see, e. g., Trilon Plaza Co. v. Allstate Leasing Corp.,* D.C.App., 399 A.2d 34, 37–38 (1979) (court's assessment of attorney's

fees for defendant's noncompliance with re-plevin writ–defendant denied entry to the U.S. Marshals–upheld even though there was no prior finding of contempt); *Wisconsin Ave. Assocs. v. 2720 Wisconsin Ave. Cooperative Ass'n Inc.,* D.C.App., 385 A.2d 20, 24 (1978) (attorney's fees upheld when plaintiff "was placed in the position of seeking a supplemental order to vindicate its rights under a prior order of the court," *even absent a prior judicial finding of contempt*).

21. Appellants' attempt to establish sufficient basis for the award of punitive damages on remand is subject to another limitation: actual damages are a prerequisite to exemplary or punitive damages in this jurisdiction. *Franklin Investment Co., Inc. v. Smith, supra* at 358.