**Melvin A. MARSHALL, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 12193.**

District of Columbia Court of Appeals.

Submitted Feb. 23, 1978.

Decided Sept. 18, 1978.

---

Melvin A. Marshall, pro se.

Martin L. Grossman, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, at the time this case was submitted, Richard W. Barton, Deputy Corp. Counsel, and S. Perry Jones,

Asst. Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before KERN, YEAGLEY and FERREN, Associate Judges.

FERREN, Associate Judge:

This is a false arrest and battery case. Plaintiff-appellant Melvin A. Marshall maintains, first, that the trial court's entry of judgment for defendant-appellee District of Columbia (District) at the close of plaintiff's case was erroneous because it was not supported by the evidence. He also contends that the trial court's grant of defendant's request to withdraw answers to admissions was erroneous because the District did not demonstrate good cause for withdrawal. We agree that the evidence of record at the close of plaintiff's case did not justify entry of judgment for the District, pursuant to Super.Ct.Civ.R. 41(b). We accordingly reverse and remand for further proceedings.

I. *The Facts; Trial Court Proceedings*

The only evidence presented at trial, constituting plaintiff's side of the story, was the testimony of Mr. Marshall, three exhibits offered and admitted in his case, and certain of the District's answers to Mr. Marshall's requests for admissions. This evidence indicates that on March 4, 1975, as Mr. Marshall emerged from the Dupont East Apartment House where he had been visiting a friend, he saw three individuals, one man and two women, seated inside a black automobile. He ran across the street to beat a changing traffic light. The three individuals left the automobile and pursued him hurriedly. The man walked up to Mr. Marshall, "flashed something," and said "Police Officers. Stop!"

Mr. Marshall asked why they were stopping him. He learned that they thought a protrusion from his back pocket, under his topcoat, was a gun. He showed them that it was a folded copy of the District's gun regulations. The male officer requested Mr. Marshall's birth date. He refused to give it, based upon his "knowl-edge" as an ex-policeman that the police had no right to demand such information. When pressed by the officer, Mr. Marshall replied he was skeptical that the three were actually police officers.

Mr. Marshall testified that he feared physical harm because the man seemed intoxicated and, further, because Mr. Marshall knew that the area was dangerous based on his previous work as a narcotics officer. After a further exchange, during which the officer told Mr. Marshall that he could not leave until he gave his birth date, the officer said that he was going to call a transport to take Mr. Marshall in for questioning. Mr. Marshall responded "good," because that would prove whether or not they were police.

A patrol car arrived 15 to 20 minutes after the initial stop. After a "friendly" ride to the police station, Mr. Marshall disclosed his name, as well as his status as an ex-policeman, to an inquiring sergeant (he had not given this information to the officers on the street). He then called his brother. The police confirmed Mr. Marshall's status as an ex-officer and told him he was free to go. He then filed a complaint with the Department and, apparently, also filed a notice of intent to sue the District pursuant to D.C.Code 1973, § 12–309. On May 19, 1975, Mr. Marshall filed a complaint in Superior Court for false arrest.

During the pendency of this action, on April 27, 1976, while walking on New Hampshire Avenue, appellant Marshall passed two police officers at a call box at the intersection of New Hampshire and N Streets, N.W. One officer stopped him, removed an eyeglass case from appellant's pocket, and looked inside it. Mr. Marshall refused to give any information and inquired as to the "*Terry*" basis for the stop. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers replied that they thought he had a gun in his back pocket. Mr. Marshall opened his coat and displayed that the bulge they had seen was created by folded papers—pleadings in this lawsuit. He expressed a desire to leave, whereupon the officer told him that the

police had the right to hold him for 10 minutes. Mr. Marshall tried three times to continue on his way but was prevented from doing so despite his protests that they had no right to hold him. Eventually, the officers permitted him to depart from what he characterized as a "strange and friendly" stop.

Mr. Marshall sent a letter of complaint to the Mayor. He then amended his complaint in the present action to include this latter incident, charging false arrest and battery, in violation of his constitutional rights.

Nonjury trial commenced on February 3, 1977. Preliminarily, the District requested permission to file overdue answers to plaintiff's second set of requests for admissions. Mr. Marshall objected to the late filing, arguing that under the rules of civil procedure such requests were deemed admitted by virtue of the defendant's failure to answer and were conclusive upon the issues raised. After argument, the court found little excuse for the District's dereliction but nonetheless granted the District's request; the judge could see no prejudice to Mr. Marshall from permitting withdrawal of the deemed admissions in favor of filing actual responses. The judge extended to Mr. Marshall the opportunity for a continuance to review the answers, but he declined.

After Mr. Marshall had testified at trial, he requested that certain of the District's answers be admitted into evidence. These disclosed that Mr. Marshall is a former Metropolitan Police Department probationary officer; that on March 4, the police officers did not tell Mr. Marshall that he had no obligation to accompany them across town, although, as an ex-officer, he "should have" known this; and that Mr. Marshall was the one who requested the police transport vehicle. As to the April 27 episode, the District's answers disclose that an officer did reach into Mr. Marshall's pocket and extract and search his eyeglass case.

After plaintiff Marshall rested, the District moved for judgment in its favor. The court granted the motion. In his oral findings of fact and conclusions of law, the trial judge stated that he could not conclude that Mr. Marshall was, or even believed he was, "arrested" during either incident. The judge further stated that the March 4 stop was justified and the trip to the station house voluntary. The judge added that the April 27 stop was both reasonable and proper. With respect to the alleged battery, the court found all physical contacts, including the April 27 search, to have been reasonable. Overall, the court concluded that Mr. Marshall had not established a "prima facie case." Finally, the court bolstered its decision with the finding that Mr. Marshall had sustained no damage and no abridgment of his constitutional rights. The court indicated that he had accorded considerable weight to Mr. Marshall's chronic litigiousness. (Mr. Marshall testified that he had filed numerous lawsuits against private parties, the federal government, and the District government—including one against the police department based on termination of his employment for refusing to cut his hair.)

The court entered judgment on February 3, 1977, and a more detailed order on February 9, 1977. This order incorporated the court's February 3 findings and conclusions and specified that the court had "considered all of plaintiff's evidence in the light most favorable to plaintiff" before granting the District's motion.

## II. The Requests for Admissions

Appellant claims that the District's failure to demonstrate "good cause" or "excusable neglect" renders erroneous the trial judge's decision to permit the District to withdraw its "admissions by default" and file "actual responses" to his second set of requests for admissions. We disagree.

■ Superior Court Civil Rule 36(b) permits the court to allow

withdrawal or amendment [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

The rule does not impose a "good cause" or "excusable neglect" burden upon the moving party; rather, it focuses on the lack of prejudice to the opposing party and on the policy for furthering just and complete resolution of the merits. *See* Wright & Miller, Fed. Prac. & Proc., Civil §§ 2257, 2264 (1970) (interpreting the identical federal rule). Accordingly, unless a party demonstrates prejudice by reliance upon previous admissions, the trial court can and should extend permission to withdraw or amend. *Id. See French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1969); *Williams v. Krieger*, 61 F.D.R. 142, 144 (S.D.N.Y.1973); *Pleasant Hill Bank v. United States*, 60 F.R.D. 1, 3 (D.Mo.1973).

■ We cannot fault the trial court's decision to exercise its discretion in favor of the District. Although the judge found that the District's delay in answering was not excusable (based as it was on the hope that a pending motion to dismiss would be resolved in its favor and thus render the requests moot), he concluded, nonetheless, that Mr. Marshall would suffer no prejudice if the "deemed" admissions were withdrawn and the actual responses filed. He further found that the confusion inherent in the plethora of pleadings in the suit required Mr. Marshall to share the blame for any delay consequent upon such confusion. The trial court also extended to Mr. Marshall an opportunity for a continuance, in the event that he believed his case would be hampered by this late development. In light of all the evidence and this latter accommodation by the trial judge, we cannot say the court abused its discretion.

### III. *The Sufficiency of the Evidence*

To assess the propriety of the trial judge's dismissal of the amended complaint, we must first determine the applicable legal rules governing his decision, then spell out the necessary elements of plaintiff's claims, and finally judge whether the findings of fact, conclusions of law, and judgment of the court meet the requisite criteria.

### A. *Superior Court Civil Rule 41(b) Motion to Dismiss*

■ We have recently observed that in nonjury trials a defendant's motion for judgment at the close of plaintiff's case is properly treated as a Rule 41(b) motion for involuntary dismissal, not as a Rule 50(a) motion for a directed verdict. *Keefer v. Keefer & Johnson, Inc.*, D.C.App., 361 A.2d 172 (1976). The distinction can be critical, for the standards for ruling on the two motions are quite different.

■ In the case of a motion for a directed verdict, the judge is not the trier of fact; thus, he must deny the motion if, viewing the evidence in the light most favorable to the plaintiff, the plaintiff has established a prima facie case. As long as there is some evidence from which jurors could find the necessary elements, a trial judge must not grant a directed verdict. *Id.*

■ On the other hand, when a defendant makes a Rule 41(b) motion in a nonjury trial, the court, as trier of fact, need not view the evidence in the light most favorable to the plaintiff. The court, rather "weighs the evidence and considers credibility the same as it would at the end of the trial." *Warner Corporation v. Magazine Realty Co.*, D.C.App., 255 A.2d 479, 481 (1969). *See Ellis v. Carter*, 328 F.2d 573 (9th Cir. 1964). The court, therefore, need not consider plaintiff's evidence as true, and if it finds that the evidence does not preponderate in plaintiff's favor, the court can enter judgment for the defendant. Thus, if there is insufficient credible evidence to sustain each element of plaintiff's claim, or if, despite such credible evidence, a valid defense is evident from plaintiff's own case, judgment for the defendant is justifiable.

In order to afford the reviewing court " 'a clear understanding of the basis of the trial court's decision,' " *Keefer, supra* at 176 n.9 (citation omitted), Rule 41(b) mandates that the court enter findings of fact and conclusions of law complying with Super.Ct. Civ.R. 52(a). Under that rule, such findings and conclusions are "sufficient if they state the controlling factual and legal grounds of

decision" and "shall not be set aside unless clearly erroneous, [with] due regard [being] given to the opportunity of the trial court to judge the credibility of the witnesses."

In summary, the judgment entered by the trial court in this case, sitting without a jury, must be viewed as a response to a Rule 41(b) motion to dismiss, and the court's findings and conclusions must be evaluated for evidentiary sufficiency under Rules 41(b) and 52(a), as applied to the elements of appellant Marshall's claims.

### B. The Elements of False Arrest and Battery

 In the District of Columbia, "the gist of any complaint for false arrest or false imprisonment is an unlawful detention . . . ." *Clarke v. District of Columbia,* D.C.App., 311 A.2d 508, 511 (1973).[1] An unlawful deprivation of freedom of locomotion for any amount of time, by actual force or a threat of force, is sufficient. *Tocker v. Great Atlantic & Pacific Tea Co.,* D.C.App., 190 A.2d 822 (1963). Intent is required, though malice is not, *Clarke, supra* at 511; but in order to be actionable, the intended actions or words of the defendant must at least furnish a basis for a reasonable apprehension of present confinement. *Riggs National Bank v. Price,* D.C.App., 359 A.2d 25, 27 (1976); *Tocker, supra* at 824; W. Prosser, Law of Torts § 11 (4th ed. 1971). In this jurisdiction, a showing of detention "without process raises a presumption of unlawful restraint and shifts to defendant the burden of justifying the restraint as lawful," *Clarke, supra* at 511. Thus, lack of legal authority or justification is not part of plaintiff's affirmative case; rather, these are defenses to be raised and proved by the defendant. *Id.; Prieto v. May Department Stores Co.,* D.C.App., 216 A.2d 577, 578 (1966).[2]

---

1. In *Shaw v. May Department Stores Co.,* D.C. App., 268 A.2d 607, 609 n.2 (1970), we concluded that there is no practical distinction between false arrest and false imprisonment. *See* W. Prosser, Law of Torts, § 11 (4th ed. 1971).

2. Mr. Marshall has asserted that his claims are constitutionally founded. We take that to mean that he is asserting—in addition to a common law tort claim for false arrest—the federal common law "constitutional tort" claim

 As to the battery claim, once a plaintiff carries the burden of showing an intentional, unpermitted, harmful or offensive contact with his person or something attached to it, he has proved a technical battery. Prosser, *supra* at § 9; Restatement (Second) of Torts §§ 13–20 (1965). The defense then has the burden of legal justification. *See Stephens v. Dixon,* 30 Md.App. 56, 351 A.2d 187 (1976).

 Once liability is established for intentional torts such as false arrest and battery, a plaintiff is entitled at least to nominal damages, as well as to compensation for " 'mental suffering, including fright, shame and mortification from the indignity and disgrace, consequent upon illegal detention.' " *Neisner Bros. Inc. v. Ramos,* D.C. App., 326 A.2d 239, 240 (1974) (citation omitted). *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Tatum v. Morton,* 183 U.S.App.D.C. 331, 562 F.2d 1279 (1977); Prosser, *supra* at §§ 9, 11.

### C. The "Law Enforcement" Defense

 This court, in striking the balance between individual rights and the need for public protection, has held that law enforcement officers and the District (liable under respondeat superior principles) can defend against claims such as those advanced by Mr. Marshall by proving a "good faith and reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted." *Wade v. District of Columbia,* D.C.App., 310 A.2d 857, 862 (1973)

established in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Because it appears that, at least in these circumstances, the establishment of the common law and constitutional claims and defenses would not differ, there is no need to discuss them separately. Our treatment may be considered equally applicable to each.

(en banc), *quoting Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1348 (4th Cir. 1973). This defense does not require proof of constitutional probable cause but, rather, of a "good faith and reasonable belief" that one's "conduct is lawful." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra* at 1348. *See Washington Mobilization Committee v. Cullinane,* 400 F.Supp. 186, 213 n.71 (D.D.C. 1975), *aff'd in relevant part,* 184 U.S.App. D.C. 215, 566 F.2d 107 (1977). This means that a police officer need not be psychic in anticipating a court's later constitutional evaluation of his actions, provided that in light of the law and circumstances known to him (including constructive knowledge) he honestly and reasonably thinks his actions are lawful. *See Wade, supra.*

### D. *The Propriety of Entry of Judgment for the Defendant*

#### 1. *The March 4 Encounter*

Appellant Marshall maintains that he became the victim of a false arrest once the officers refused to release him after they had confirmed that his back pocket did not contain a concealed weapon. He argues that the officers' continued insistence that he reveal his birth date, as well as their taking him to the police station for questioning, exceeded the bounds of proper procedures and thus constituted a civil wrong.

The trial court found no actual "arrest," concluded that the police officers' conduct, as portrayed by Mr. Marshall's own testimony, was proper, and decided that Mr. Marshall voluntarily accompanied the officers to the station. The court completely discredited Mr. Marshall's assertion that he did not willingly accompany the police. Thus, in effect, the court concluded that the detention initially was reasonable, that the

actual restriction of freedom lasted only until the police transport was called (or arrived), that this detention lasted a reasonable period of time, and, finally, that Mr. Marshall's voluntary acts negated any claim of detention from that point forward.[3] In the absence of defense evidence, we cannot affirm the trial court's finding and consequent dismissal, despite the broad scope of a trial court's discretion under Rule 41.

 Mr. Marshall produced evidence of detention lasting significantly beyond the point at which the police were disabused of the suspicion that he had a gun. Confinement, no matter how brief, suffices to establish a prima facie case of false arrest. The District admits that the police confined Mr. Marshall for the first period of detention; *i. e.,* between their discovery of papers (not a gun) in his pocket and the calling or arrival of police transport. Moreover, in weighing all the evidence, the court could not properly have found that the District had established a "law enforcement" defense covering this period of detention, based on "good faith and reasonable belief," *Wade, supra* at 863; for absent defense evidence, the trial court could not have ascertained the "partially subjective," *id.,* good faith of the officers.

With regard to Mr. Marshall's second period of detention, *i. e.,* between the calling or arrival of the transport and his release at the police station, we cannot endorse the trial court's conclusion that he voluntarily accompanied the police.[4] In one of its admissions, the District conceded that the officers did not inform Mr. Marshall of his right not to accompany them to the station; the District contended, rather, that as an ex-officer he "should have" known he did not have to do so because "he was not under arrest." This admission that Mr.

---

3. The court referred to the pre-transport and post-transport periods without precisely drawing the line at the officers' call for the patrol car or, later, at the car's arrival. Analytically, it makes no difference because Mr. Marshall claims that he did not acquiesce in his detention beyond the point that he demonstrated he was not carrying a gun.

4. Although one of the District's answers to requests for admissions does include the language that "plaintiff was transported at his request," it is not clear from the record that plaintiff intended to enter such portion of that admission into evidence or that the trial court relied on such evidence.

Marshall did not overtly volunteer to go along, when coupled with his claim of coercion, constituted uncontradicted evidence of detention.

In summary, even with the wide discretion granted under Rule 41(b), the trial court cannot properly have evaluated plaintiff's evidence and credibility, including the District's admissions, in a way that justified dismissal of the claim based on the March 4 incident.

### 2. *The April 27 Incident*

As to the April 27 incident, the District effectively conceded a stop which lasted beyond the point at which the police learned that appellant did not have a gun. Mr. Marshall immediately displayed the absence of a concealed weapon. As in the case of the March 4 incident, the trial court could not have concluded, without defense evidence, that the officers' continued insistence on detaining Mr. Marshall was undertaken in good faith.

Similarly, with respect to the alleged battery, the District admitted that an officer removed and searched Mr. Marshall's eyeglass case, thereby confirming Mr. Marshall's claim that he did not consent to the touching. Conceivably, the trial court might properly have found that Mr. Marshall suffered neither a "harmful" nor an "offensive" contact and therefore did not make out a complete prima facie case of battery. The court, however, does not appear to have considered the question of offensiveness of the touching; the judge merely found that plaintiff had not been "struck" or "hurt" by the touching. The findings of the trial judge, therefore, do not negate the possibility of an offensive touching. Without such a finding by the trial court, we decline to find that the search could not have been offensive to a reasonable person.

The judge also found an adequate defense to the alleged battery by concluding that the "search" was "reasonable." Yet, there is no discernible, reasonable basis in plaintiff's case for such a finding. Both

the conduct and scope of a *Terry*-type frisk are limited by the need for protection of the officers and nearby citizens. Absent reasons to believe that plaintiff and the contents of his eyeglass case posed a threat of some sort, the "search" would not have been proper under *Terry*. Of course, the officers' subjective "good faith and reasonable belief" also provide a basis for a valid defense, but these elements did not surface during plaintiff Marshall's case.

Finally, the court's conclusion that Mr. Marshall suffered no damage cannot support the dismissal. In addition to the uncontested expenses of a telephone call and a return cab ride on March 4 (a total of $2.10), Mr. Marshall, should he succeed on the liability claim, would be entitled to nominal damages for the intentional torts, as well as to damages for any psychological harms. *See Neisner, supra.*

### IV. *Conclusion*

While the present record does not reflect any flagrant police conduct, nor more than minimal damages sustained by appellant, it does contain sufficient evidence of false arrest and battery, confirmed by the District's admissions to date, to withstand dismissal under Rule 41(b)—whatever the trial court thought of Mr. Marshall's credibility.

There is, moreover, inadequate evidence of record from which to conclude that the District can avail itself of the partially subjective "good faith and reasonable belief" defense of *Wade, supra,* and *Bivens, supra.* As a result, the trial court erred in dismissing Mr. Marshall's complaint. We reverse and remand for trial in light of the criteria outlined in this opinion.

*Reversed and remanded.*