906 F.2d 783
 285 U.S.App.D.C. 89, 64 Ed. Law Rep. 349
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Stephen KOZUP, et al., Appellants and Cross-Appellees,
v.
GEORGETOWN UNIVERSITY, Appellee and Cross-Appellant.
 Nos. 89-7124, 89-7125.
 United States Court of Appeals, District of Columbia Circuit.
 July 3, 1990.
 
 Before WALD, Chief Judge, and MIKVA and CLARENCE THOMAS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.R. 14(c). It is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which these appeals have been taken, including the denial of costs to Cross-Appellant Georgetown University, be affirmed for the reasons stated in the attached memorandum.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Matthew Kozup was born at Georgetown University Medical Center on January 10, 1983. In the days following his premature birth, Matthew suffered from hypovolemia (low blood volume) and, at one point, a pneumothorax (a collapsed lung). Doctors at Georgetown treated Matthew by giving him blood transfusions. Tragically, three of the transfusions were contaminated with the virus now known to cause AIDS. In mid-1986, Matthew died from AIDS-related infections. See Kozup v. Georgetown Univ., 663 F.Supp. 1048, 1050-53 (D.D.C.1987) (more fully reporting the facts), aff'd in part and vacated in part, 851 F.2d 437 (D.C.Cir.1988).
 
 
 5
 Matthew's parents, Stephen and Susan Kozup, sued Georgetown and the American Red Cross on several common-law and statutory tort theories. The district court granted both defendants' motions for summary judgment. Kozup, 663 F.Supp. at 1061. On appeal, this court affirmed the judgment in favor of the Red Cross; it affirmed the judgment in favor of Georgetown in most respects, but vacated the judgment on the Kozups' claim that Georgetown committed a battery by giving Matthew transfusions without first obtaining his parents' informed consent. Kozup, 851 F.2d at 440. On remand, the district court held a jury trial on the Kozups' battery claim. Georgetown prevailed. The Kozups now challenge various jury instructions given and evidentiary rulings made by the district court. In its cross-appeal, Georgetown complains that the court wrongly refused to award it its costs. We affirm the district court's judgment in all respects.
 
 I. The Kozups' Allegations of Error
 
 6
 A. Instructions on Implied and Apparent Consent
 
 
 7
 The Kozups raise several challenges to the district court's jury instructions on the defenses of implied consent and apparent consent, J.A. at 851-54. Their objections rely largely on Canterbury v. Spence, 464 F.2d 772, 783 (D.C.Cir.), cert. denied, 409 U.S. 1064 (1972), which states that a medical patient's or his guardian's consent to treatment cannot shield a defendant from liability for battery unless the defendant, before obtaining consent, discloses the material risks of and alternatives to the proposed treatment.
 
 
 8
 The Kozups first assert that "the defenses of implied or apparent consent have no place in the context of consent to medical treatment in the 1980's," Brief for Appellants at 16, because these defenses sidestep Canterbury 's requirement of explicit disclosure. We disagree. Although Canterbury, 464 F.2d at 783, does say that to constitute a defense in a battery case, a patient's consent must be informed consent, the statement is dictum. See id. at 793 (holding that battery claim was barred by statute of limitations). We believe that when this issue squarely arises in the District of Columbia courts, those courts will adopt the majority rule: a doctor may defend against a battery claim by proving the patient's consent to treatment, even if the consent is not fully informed. See, e.g., Cobbs v. Grant, 8 Cal.3d 229, 240, 502 P.2d 1, 7-8, 104 Cal.Rptr. 505, 512 (1972) (in bank); Largey v. Rothman, 110 N.J. 204, ----, 540 A.2d 504, 506 (1988) (per curiam); Oates v. New York Hosp., 131 A.D.2d 368, ----, 517 N.Y.S.2d 6, 7 (1987); Kohoutek v. Hafner, 383 N.W.2d 295, 298-99 (Minn.1986). The Kozups argue that when a doctor has failed to disclose relevant information, a patient's implied or apparent consent provides no defense. That would be true in a negligence action, but it is not true in this action for battery. See Kozup, 851 F.2d at 440 ("Georgetown's problem with the battery claim is not that there was a failure to inform before obtaining consent, but that there was no consent at all."); see also id. at 439 (affirming summary judgment against Kozups on negligence claim).
 
 
 9
 The Kozups' next argument, that the district court erred by instructing the jury on implied and apparent consent rather than instructing on express consent alone, reflects a misreading of Canterbury. Canterbury discusses whether a patient's consent must be informed. It does not say that such consent must be express. These issues are not related. The district court properly instructed that consent to treatment can be express, implied, or apparent; a contrary rule, requiring doctors to withhold treatment until a patient or guardian says or writes "I consent," would do some patients great harm.
 
 
 10
 The Kozups also claim that the district court erred by giving them the burden of showing that they did not consent to Matthew's blood transfusions. See J.A. at 850-52 (jury instructions). Because District of Columbia law makes "unpermitted" contact an element of a battery plaintiff's prima facie case, such a plaintiff must indeed prove absence of consent. Marshall v. District of Columbia, 391 A.2d 1374, 1380 (D.C.1978); see also Restatement (Second) of Torts Sec. 10 comment c (1965) (discussing "consent to invasions of the interests of personality, in which the burden is on the plaintiff to prove absence of consent"). Thus, we find no fault with the court's instructions on consent.
 
 B. Instructions on Necessity and Emergency
 
 11
 The Kozups next argue that the district court erred by failing to instruct the jury that necessity--the Georgetown doctors' belief that Matthew would die without blood transfusions--is no defense to battery. Although the Restatement (Second) makes clear that necessity cannot shield a battery defendant from liability, see Restatement (Second) of Torts Sec. 13 comment c, we cannot say that the court erred when it refused to caution the jury regarding this inapposite defense. The Kozups stress that at trial, "Georgetown played up its belief that, if Matthew did not receive the blood transfusions when they were administered, he would have died...." Brief for Appellant at 36. In our view, the relevant testimony, J.A. at 531-625, did not suggest a necessity defense so strongly that the lack of an anti-necessity-defense instruction substantially prejudiced the Kozups.
 
 
 12
 In addition, the district court's observation that the Kozups' proposed instruction on necessity would "undercut[ ] instructions on emergency and would confuse the jury," J.A. at 825, was well-founded. Much of the testimony that allegedly suggested a necessity defense actually pertained to the question whether the Georgetown doctors gave Matthew transfusions in response to "sudden, urgent, unexpected or unforeseen serious happening[s] demanding immediate action." J.A. at 850 (jury instructions' definition of emergency). The Kozups do not deny that the evidence tending to show necessity (which would provide no defense, see Restatement (Second) of Torts Sec. 13 comment c) overlapped with the evidence tending to show an emergency (which would remove the need for consent, see Kozup, 851 F.2d at 439). Instead, they assert that "[t]he premise of this Court's [earlier] opinion was that the medical treatment at issue was not an emergency.... 851 F.2d at 440...." Brief for Appellant at 35 n. 18.
 
 
 13
 This court's earlier opinion, in explaining the need for a remand, did imply that Georgetown had not yet established an emergency defense. See Kozup, 851 F.2d at 439 (listing "bona fide medical emergency" and implied consent among defenses to battery, then analyzing only implied consent); id. at 440 (noting that Georgetown had cited no cases in which a battery defendant who had not proved express consent had secured "a directed verdict or a summary judgment in a non-emergency circumstance"). The court did not, however, hold that an emergency was lacking as a matter of law, and it did not direct the district court to grant the Kozups summary judgment on the emergency issue. This court's oblique comments on the emergency issue, therefore, did not preclude the district court from instructing the jury on that issue. The Georgetown doctors' testimony at trial, moreover, gave a sufficient basis for an emergency instruction.[1] For these reasons, we conclude that the court properly instructed the jury on emergency and properly refused to instruct on necessity.
 
 C. Instructions on Alternatives
 
 14
 The Kozups contend that the district court erred by requiring them to prove that had Georgetown sought their express consent to the blood transfusions, Matthew's treatment would have taken a different course. They also argue that the court erroneously excluded their rebuttal to Georgetown's evidence that it had no choice but to give Matthew immediate transfusions. We agree, as do both parties, that evidence on alternatives only concerned how much marginal harm any battery caused--a damages issue that was irrelevant in the liability phase of this bifurcated trial. Since, however, any evidence tending to show a lack of alternatives was also relevant on the issue of emergency, the court's rulings on alternatives constituted harmless error. See Fed.R.Civ.P. 61.
 
 D. Other Allegations of Error
 
 15
 None of the remaining assertions of error by the Kozups justifies reversing the judgment.
 
 II. Georgetown's Motion for Costs
 
 16
 Although the district court did not state its reasons for denying Georgetown its costs, see J.A. at 321, the record convinces us that the court did so in recognition of how this case has emotionally and financially burdened the Kozups. The court did not abuse its discretion by relying on these considerations.
 
 
 
 [1]
 In their reply brief, the Kozups argue that Matthew's condition did not, as a matter of law, involve any "sudden, urgent, unexpected or unforeseen serious happening[s] demanding immediate attention." J.A. at 850 (emphasis added); see Reply Brief for Appellants at 5-8. In our view, the district court properly left this determination to the jury. Although the most sudden complication, the pneumothorax, did not arise until after Matthew had received one contaminated transfusion, see id. at 6-8, the jury was entitled to consider Matthew's hypovolemia an unexpected complication, or at least an urgent one